UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JESSACA L., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. 3:18-cv-05408-TLF <br><br> ORDER REVERSING DEFENDANT'S DECISION TO DENY BENEFITS AND REMANDING FOR FURTHER PROCEEDINGS |

Jessaca L. has brought this matter for judicial review of defendant's denial of her applications for disability insurance and supplemental security income (SSI) benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons below, the undersigned reverses defendant's decision to deny benefits and remands for further proceedings.

I. PROCEDURAL BACKGROUND

Plaintiff filed applications for disability insurance and supplemental security income benefits in September 2014, alleging she became disabled as of April 15, 2014. Dkt. 9, Administrative Record (AR) 15. Both applications were denied on initial and reconsideration administrative review. *Id.* A hearing was held before an administrative law judge (ALJ). *Id.* Plaintiff appeared and testified, as did a vocational expert. AR 45-69. The ALJ determined that plaintiff could perform her past work as a personnel clerk and therefore is not disabled. AR 15-36. The ALJ also determined that there were jobs existing in significant numbers in the national

ORDER REVERSING DEFENDANT'S DECISION TO
DENY BENEFITS AND REMANDING FOR FURTHER
PROCEEDINGS - 1

economy that plaintiff could perform, and that she is not disabled for that reason, as well. AR 35. Plaintiff filed a complaint with this Court, seeking reversal and remand for further proceedings.

## II. STANDARD OF REVIEW

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error; or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This requires "more than a mere scintilla," though "less than a preponderance" of the evidence. *Id.*; *Trevizo v. Berryhill*, 871 F.3d 664, 674-75 (9th Cir. 2017).

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court is required to weigh both the evidence that supports, and evidence that does not support, the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

"If the evidence admits of more than one rational interpretation," that decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). That is, "[w]here there is conflicting evidence sufficient to support either outcome," the Court "must affirm the decision actually made." *Allen*, 749 F.2d at 579 (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

## III. ISSUE FOR REVEW

Did the ALJ err in weighing the medical opinion evidence?

## IV. DISCUSSION

The Commissioner uses a five-step sequential evaluation process to determine if a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. At step four of that process, a claimant's

residual functional capacity (RFC) is assessed to determine whether past relevant work can be performed, and, if necessary, at step five to determine whether an adjustment to other work can be made. *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013). At step five, the Commissioner has the burden of proof, which can be met by showing a significant number of jobs exist in the national economy that the claimant can perform. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(e), 416.920(e).

A. Opinions on Mental-Health Limitations

The ALJ erred in rejecting the medical opinions of two examining psychologists and a treating therapist regarding plaintiff's mental-health limitations. The ALJ's reasons are not supported by substantial evidence

An ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). Even when a treating or examining physician's opinion is contradicted, an ALJ may only reject that opinion "by providing specific and legitimate reasons that are supported by substantial evidence." *Id.*

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). On the other hand, an ALJ need not accept the opinion of a treating physician if that opinion is brief, conclusory, and inadequately supported by medical findings or by the record as a whole. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

Although an ALJ must thus provide at least specific and legitimate reasons to reject the opinion of an "acceptable medical source" who treated or examined the claimant, "acceptable" sources include "only licensed physicians and certain other qualified specialists." *Molina v.*

*Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); 20 C.F.R. §§ 404.1513(a), 416.913(a) (versions effective September 3, 2013 to March 26, 2017). Licensed counselors are not "acceptable medical sources" under the regulations in effect at the time of plaintiff's application. *See* 20 C.F.R. § 404.1513(d); *McGee v. Astrue*, 368 F. App'x 825, 828 (9th Cir. 2010). Because these sources "are not entitled to the same deference" as acceptable medical sources, the ALJ needs to give only "reasons germane" to the source to discount its testimony. *Molina*, 674 F.3d at 1111 (citing 20 C.F.R. § 404.1527; Social Security Ruling (SSR) 06–03p).

1. <u>Examining Psychologist Russell M. Bragg, Ph.D.</u>

Dr. Bragg performed a psychological evaluation of plaintiff in July 2014. AR 335-40. He reviewed her medical record and conducted a clinical interview and mental-status examination. *Id.* He observed that plaintiff showed a normal rate of speech and was generally attentive and cooperative in the interview. AR 339.

However, Dr. Bragg also found that her thought content was predominantly negative; she described her mood as worried and irritable and reported "always thinking of dark things." *Id.* He observed her affect to be "anxious and sad." *Id.* And he found that plaintiff's performance on the Trail Making Test, Parts A and B, was "impaired" and "consistent with brain damage, significant affective disturbance, and/or alcohol/drug abuse/dependence." AR 339. He noted that plaintiff scored in the severe range on the Beck anxiety and depression inventories. AR 339. He diagnosed her with major depressive disorder, dysthymic disorder, panic disorder without agoraphobia, post-traumatic stress disorder (PTSD), and generalized anxiety disorder. AR 337.

Dr. Bragg opined that plaintiff's conditions would cause moderate-to-marked limitations in her ability to: perform activities within a schedule; maintain regular attendance; be punctual within customary tolerances without special supervision; be aware of normal hazards and take appropriate precautions; and maintain appropriate behavior in a work setting. AR 338. He also

opined the plaintiff would have marked to severe limitations in her abilities to complete a normal work day and work week without interruptions from psychologically-based symptoms; and marked limitations in plaintiff's ability to adapt to changes in a routine work setting and set realistic goals and plan independently. *Id.*

The ALJ gave "[l]ittle weight" to Dr. Bragg's opinion, citing four reasons. AR 31. None of these reasons is specific and legitimate and supported by substantial evidence.

First, the ALJ found that Dr. Bragg's opinions were "highly inconsistent with the record as a whole." AR 31. Whether a professional medical provider's opinion is consistent with the record is an important factor in assessing the weight to give the opinion. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). Here, substantial evidence does not support the ALJ's finding of inconsistency.

The ALJ found that "the treatment notes that were not related to obtaining benefits demonstrated essentially normal mental functioning," citing generally to a large portion of the medical record. AR 31. Yet numerous treatment records *do* indicate impaired mental functioning. *See, e.g.*, AR 412, 438 (anxiety observed); AR 420, 521, 527 (flat effect, passive attitude, depression); AR 477-78 (slumped posture, facial expression showing anxiety, fear, and/or apprehension and depression and/or sadness, and decreased or slowed body movements; blunted, anxious, and depressed mood; illusions; and reports of wanting to self-harm); AR 525 (appeared "shut down," tired, and vulnerable); AR 531-35 (exhaustion, agitation, sadness). The ALJ offered no reasoned basis for the distinction he drew between "treatment notes that were not related to obtaining benefits" and treatment notes that were. AR 31. And the record would not, in any case, support the ALJ's rejection of the latter. *See, e.g.*, AR 477-78, 521, 527 (treatment notes, apparently unrelated to benefits, showing mental health impairments). The record contains

1 no affirmative evidence to support an inference of malingering. Accordingly, this reason was neither specific and legitimate nor supported.

Second, the ALJ found that "Dr. Bragg did not have any medical records available for his review and based his opinion entirely on the claimant's report." AR 31. This reason is not supported, either. Although Dr. Bragg did not review plaintiff's treatment record, it does not follow that he based his opinion entirely on plaintiff's self-reports. Dr. Bragg conducted a thorough mental status exam and made abnormal findings in nearly every category, except for abstract thought. AR 339. Thus, even if the ALJ could properly reject Dr. Bragg's opinion if he had based it on plaintiff's self-reports, Dr. Bragg's evaluation shows that he did not do so. *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (clinical interview and mental status exam "are objective measures and cannot be discounted as a 'self-report'").

The ALJ's decision ignored both the "nature" of psychology, which always depends in part on a patient's self-reports combined with the examiner's expert observations, and the objective component of the mental-status examination. *Buck*, 869 F.3d at 1049. Like the ALJ in *Buck v. Berryhill*, the ALJ erred in relying on the "'relative imprecision of the psychiatric methodology'" to reject an examining source's opinion. *Id.* (quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989)).

Third, the ALJ observed that "despite the claimant's allegations of pervasive panic attacks, she only presented to the emergency department on a single occasion with related complaints." AR 31. This reason cannot, by itself, justify rejecting Dr. Bragg's opinion: in addition to "intermittent and severe" panic attacks, Dr. Bragg listed numerous other symptoms, along with objective findings, that supported the limitations he found. AR 336-40. As discussed above, those findings are consistent with notes throughout plaintiff's treatment record.

Finally, the ALJ found that Dr. Bragg's "opinion is highly consistent with the observations of the DSHS facilitator" that plaintiff showed "average pace." AR 31. Even if this isolated observation from a single note in the record could support the inference the ALJ drew, it is still irrelevant: Dr. Bragg did not base his opinion on plaintiff's rate of speech, which he, too, observed to be normal. *See* AR 339.

### 2. Examining Psychologist Janis L. Lewis, Ph.D.

Dr. Lewis performed a psychological evaluation of plaintiff in January 2017. AR 559-72. She reviewed Dr. Bragg's evaluation and two items from plaintiff's treatment record. AR 560. She also conducted a clinical interview and a mental status examination. *Id.*

In addition to reviewing plaintiff's mental-health history, Dr. Lewis observed that while plaintiff was "thoughtful in her responses" and made "fair eye contact," "[s]he appeared sad and fearful, consistent with her allegations," and "[h]er overall pace was slow," adding 30 minutes to the appointment. AR 564. She found that plaintiff "was guarded, very slow paced and never smiled." AR 571. And she recorded plaintiff's responses to cognitive testing in a mental-status exam. AR 564-65. Dr. Lewis diagnosed plaintiff with PTSD, panic disorder with agoraphobia, persistent depressive disorder, and somatic symptoms disorder. AR 566.

Dr. Lewis opined that plaintiff's persistence is "mildly impaired in short bursts;" that "she is not managing well" in her activities of daily living; that her social functioning is "moderately poor," which would lead her to "be easily offended/hurt by supervisor criticism, unable to work with the public, and . . . find it hard to adjust to changes in coworkers." AR 566. She found plaintiff's prognosis to be poor and that she cannot manage her own funds. *Id.* In an addendum, Dr. Lewis further opined that plaintiff would be "capable of being hired in a non-public setting but incapable of maintaining a regular full time work week or work day. She would drift off task, perform too slowly and become very avoidant." AR 571.

ORDER REVERSING DEFENDANT'S DECISION TO
DENY BENEFITS AND REMANDING FOR FURTHER
PROCEEDINGS - 7

The ALJ gave several reasons for finding Dr. Lewis's opinion "inconsistent with the record as a whole" and assigning it little weight. AR 32. None of these reasons is specific and legitimate and supported by substantial evidence.

First, the ALJ noted that the determination of whether plaintiff can work is an issue reserved to the Commissioner. AR 32. While this is an accurate statement of the law, *see* 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1) (versions effective before March 27, 2017), it does not justify rejecting the specific functional limitations Dr. Lewis evaluated in his opinion about the plaintiff's mental health conditions.

Second, the ALJ found that plaintiff's "treatment-related mental status examinations are essentially normal" and she interacts with providers without difficulty and understands their explanations and recommendations. AR 32. As discussed above, if the ALJ was implicitly disregarding mental status examinations that he deemed to be non-treatment-related, he lacked a legal or factual basis to do so. In addition, the ALJ's finding was unsupported on its own terms, as numerous treatment records include mental-status-exam results indicating some impairment. *See* AR 477-78, 521, 527.

Third, the ALJ found that Dr. Lewis's own observations regarding cognitive tests and social functioning undermined her opinions. An ALJ may discount an examining doctor's opinion based on its inconsistencies with the doctor's own notes. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Here, however, such a finding is not supported. Dr. Lewis made numerous observations supportive of her opinions, including that plaintiff "appeared sad and fearful," had a slow pace, was guarded, and gave numerous incorrect responses in cognitive tests. AR 564-65, 571. An ALJ "must be careful not to succumb to the temptation to play doctor," as

ORDER REVERSING DEFENDANT'S DECISION TO
DENY BENEFITS AND REMANDING FOR FURTHER
PROCEEDINGS - 8

the ALJ did here in re-evaluating Dr. Lewis's own objective findings and drawing his own conclusions. *See Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990).

Fourth, the ALJ found that the record showed "no indication . . . of the claimant getting into frequent conflicts with others or engaging in anti-social behaviors." AR 32. This is not a legitimate reason to reject Dr. Lewis's opinions, as Dr. Lewis gave no indication that she based her opinions on this type of behavior. *See* AR 566; *see also* AR 336-40 (Dr. Bragg opinion).

Fifth, as with Dr. Bragg's opinion, the ALJ found Dr. Lewis's opinion "highly inconsistent" with the DSHS facilitator's observations. AR 32, 227. The ALJ did not identify any of those observations or explain their inconsistency with Dr. Lewis's opinion. AR 32. And no such inconsistency is apparent: The facilitator reported only plaintiff's appearance and presentation, including that she appeared neat and groomed, could make eye contact, and answered questions at an average pace. AR 227. Dr. Lewis made similar observations. AR 339 (noting "adequate" grooming and hygiene, normal rate of speech, and that plaintiff "was generally attentive and cooperative"). Dr. Lewis based her opinion instead on thorough clinical testing that the facilitator did not perform. *See id.* The ALJ's finding of inconsistency is not supported.

Finally, the ALJ found that when plaintiff left her previous job in April 2014, "she was performing adequately in spite of the mental and physical impairments of which she now complains," indicating "she is capable of greater than simple tasks." AR 32. The ALJ incorporated his prior finding that plaintiff's "testimony suggests that her work product was adequate when she left her job." *Id.*

The record does not support this finding, either. Plaintiff testified that her therapist (Autumn Piontek-Walsh) recommended she stop working because of her mental symptoms and

pain, and that continuing at work would put her at risk of psychiatric hospitalization. AR 51. She stated that her employer never told her they were dissatisfied with her work. AR 51-52.

Plaintiff said she had not told her employer about her mental-health issues. AR 52. She stated: "I was making a lot of mistakes, but I was able to cover them before my employer noticed. I had a private office and so I was able to close the door and cry and have panic attacks and lie on the floor for my back pain and they did not know that was happening." *Id.* The ALJ could not reasonably conclude from this testimony that plaintiff "was performing adequately at work." AR 32; *Trevizo v. Berryhill*, 871 F.3d 664, 674 (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." [internal quotation marks omitted]).

### 3. Treating Therapist Autumn Piontek-Walsh, LMHC

Ms. Piontek-Walsh, plaintiff's treating therapist, performed a psychological evaluation of plaintiff in July 2016. AR 487. She reviewed plaintiff's mental-health treatment record and conducted a clinical interview and mental status examination. AR 487-90. Ms. Walsh observed plaintiff was appropriately dressed, though she sometimes appears disheveled; her speech was normal; she typically presents with a good attitude; but she also presents with a depressed mood, visible anxiety, and a flat affect. She found plaintiff's cognitive signs to be within normal limits, though plaintiff voiced concerns about short-term memory and concentration and, "when anxious, her perception is not consistently based in reality." AR 490.

Ms. Piontek-Walsh opined that plaintiff had several moderate limitations in her ability to function and a marked limitation in her ability to complete a normal work day and work week without interruptions from psychologically based symptoms. AR 488-89; *see also* AR 375 (July 2014 letter opining plaintiff was unable to work).

Because Ms. Piontek-Walsh is not an "acceptable medical source" under the Social Security regulations, the ALJ was required to provide germane reasons to discount her opinion. *See* 20 C.F.R. § 404.1513(d); *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). The Ninth Circuit has not defined "germane" in this context. Black's Law Dictionary defines it as synonymous with "relevant" or "pertinent." Black's Law Dictionary at 756 (9th ed.) (West 2009). Even when a reason would fit into the category of "germane," substantial evidence must support that reason. *Lewis v. Apfel*, 236 F.3d 503, 511-12 (9th Cir. 2001).

The ALJ gave Ms. Piontek-Walsh's opinion "little weight" for several reasons. None of these reasons was germane and supported by substantial evidence. *See Lewis*, 236 F.3d at 512.

First, the ALJ again noted that whether a claimant can work is an issue reserved to the Commissioner. AR 31. As noted with respect to Dr. Lewis, although this is an accurate statement of the law, it does not justify rejecting the specific functional limitations Ms. Piontek-Walsh opined about. *See* AR 488-89.

Second, the ALJ stated that Ms. Piontek-Walsh's opinion that plaintiff was unable to work was not consistent with the record. As with the ALJ's analysis of Dr. Bragg's opinion, the ALJ broadly cited the treatment record for this finding regarding Ms. Piontek-Walsh's opinion. While the ALJ is primarily responsible for identifying and resolving inconsistencies in the record, the Court may not affirm the ALJ's decision "simply by isolating a specific quantum of supporting evidence." *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989) (internal quotation marks and citation omitted); *Morgan v. Commissioner of the Social Security Administration*, 169 F.3d 595, 601 (9th Cir. 1999). As discussed above, a longitudinal view of the record does not support the ALJ's characterization of the record. *Trevizo v. Berryhill*, 871 F.3d 664, 674

ORDER REVERSING DEFENDANT'S DECISION TO
DENY BENEFITS AND REMANDING FOR FURTHER
PROCEEDINGS - 11

(defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." [internal quotation marks omitted]).

Third, the ALJ noted that Ms. Piontek-Walsh "provides no explanation . . . why the claimant is limited to a greater extent" in her ability to complete a workday or work week than in any other category. AR 31-32. The ALJ apparently inferred that Ms. Piontek-Walsh's opinion that plaintiff was only moderately limited in several areas of functioning (e.g., performing tasks following detailed instructions; following a schedule; performing routine tasks without special supervision; and adapting to changes), was necessarily inconsistent with her opinion that plaintiff was markedly limited in her ability to "[c]omplete a normal work day and work week without interruptions from psychologically based symptoms." *See* AR 31-32, 488-89.

Neither the ALJ nor the Commissioner provide a logical explanation for this inference, and none is apparent. The Commissioner asserts that the findings are "fundamentally inconsistent" because "[i]f Plaintiff otherwise had no more than moderate psychologically based symptoms, it does not follow that those symptoms could cause a marked interference in her ability to complete a normal work day or work week." Dkt. 13, p. 6. This assertion is unpersuasive. First, Ms. Piontek-Walsh found plaintiff had moderate psychologically-based *limitations*; she described her *symptoms* in more severe terms. *See* AR 487-88. More importantly, the limitation in question (of a patient's ability to complete a normal work day or work week without interruptions from psychologically based symptoms) estimates, by its terms, the cumulative effect of limitations from the patient's psychological symptoms on her ability to work a full schedule. It was therefore unreasonable for the ALJ to conclude that numerous moderate and mild limitations can never amount to a marked cumulative limitation on a claimant's ability to work a full week.

Fourth, the ALJ noted that plaintiff's panic attacks caused her to seek emergency medical treatment on merely one occasion, and so the ALJ reasoned they would not markedly interfere with her ability to complete a normal workday or work week. Yet Ms. Piontek-Walsh stated that plaintiff's panic attacks occur "on the continuum of moderate to severe and can happen as frequently as once per week." AR 488. She made clinical findings regarding these panic attacks and plaintiff's depressive episodes, including more acute episodes caused by physical health concerns and traumatic triggers. *Id.* The ALJ's finding that plaintiff sought only a one-time emergency treatment for panic attacks cannot support a wholesale rejection of Ms. Piontek-Walsh's treating opinion. (And, notably, Ms. Piontek-Walsh did not indicate she had based her opinion in whole, or even in part, on panic attacks of a degree that would require or suggest to the patient or treatment provider the need for emergency treatment.)

Fifth, the ALJ repeated his finding that plaintiff's testimony indicates that her work was adequate when she left her prior job. For the reasons discussed above with respect to Dr. Lewis's opinion, this reason is not supported.

Finally, the ALJ found "there were no indication [sic] of abnormalities during the associated mental status examination other than subjective complaints." AR 32. This is inaccurate: Ms. Piontek-Walsh observed that plaintiff "often appears depressed and anxious" in her attitude and mood and presents with a flat affect. AR 490. These are objective observations not based on plaintiff's subjective complaints. *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).

B. Opinions on Physical-Health Limitations

    1. Treating Physician Joel Yelland, M.D.

Dr. Yelland was plaintiff's treating physician and saw and examined her regularly between September 2014 and January 2016. AR 366-67, 418-48. In a January 2016 treatment

note, under the "SUBJECTIVE" heading, he indicated that plaintiff had come in to the clinic to complete Social Security disability paperwork. AR 420. He listed diagnoses of "severe depression, severe PTSD, and severe fibromyalgia, as well as moderate anxiety, sleep disorder, and chronic back pain," and he wrote that she could not sit or stand for longer than 15 minutes, could do minimal lifting, was socially isolated and had panic attacks, and was unable to work. AR 420.

The ALJ gave several reasons to discount Dr. Yelland's statements. One of those reasons was that "these restrictions are listed under the subjective heading, which leads to the belief that these are self-reported limitations rather than the doctor's actual opinion." AR 31. This is a specific, legitimate, and supported reason for discounting Dr. Yelland's opinion: The ALJ could reasonably conclude—from the location of these notes under the heading "SUBJECTIVE," and reading them in context with the preceding and succeeding paragraphs—that Dr. Yelland was recording plaintiff's self-report and what the plaintiff wished to include in her disability paperwork, and that this was not a documentation of Dr. Yelland's opinion or conclusions about her limitations. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) (court will uphold ALJ's findings if supported by "inferences reasonably drawn from the record").

### 2. Treating Physician Lissa Lubinski, M.D.

Dr. Lubinski treated plaintiff beginning in July 2016. *See* AR 498. She completed a medical-source statement in March 2017. AR 552-57. Using a check-box form, Dr. Lubinski opined that plaintiff has extreme physical limitations, including that she can never lift or carry more than 10 pounds; can sit for only 15 minutes at a time and 30 minutes total in an eight-hour day; can stand for only 10 minutes at a time and 60 minutes total in an eight-hour day; can walk

for only 15-20 minutes at a time and total in an eight-hour day; can never reach with either hand; and can never climb ladders and scaffolds, balance, stoop, kneel, crouch, or crawl. AR 552-55.

The ALJ rejected Dr. Lubinski's opinion, in part because the ALJ found it inconsistent with the record, which, the ALJ found, is "generally devoid of objective abnormalities and generally revolves around claimant's subjective complaints of pain." AR 30.

An "ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). An ALJ may reject an opinion on the limiting effects of impairments when the opinion consists "primarily of a standardized, check-the-box form in which [the provider] failed to provide supporting reasoning or clinical findings, despite being instructed to do so." *Compare Molina v. Astrue*, 674 F.3d 1104, 1111–12 (9th Cir. 2012) *with Garrison v. Colvin*, 759 F.3d 995, 1014 n.17 (9th Cir. 2014) (holding ALJ could not reject opinions solely because they were given in check-box forms, where the "check-box forms did not stand alone" but instead "reflected and were entirely consistent with the hundreds of pages of treatment notes").

The ALJ's reasons with respect to Dr. Lubinski's March 2017 report are supported by the record. The longitudinal medical record indicates that plaintiff's physical symptoms were mild to moderate, she showed few objective signs of significant impairments, and her physical conditions did not significantly limit her functioning. *See, e.g.*, AR 363-64, 366-67, 371-72, 377-78, 381-83, 411-12, 414, 420, 422, 424, 428-29, 436, 438-39, 441, 447, 450-51. The ALJ had a reasonable explanation, supported by substantial evidence, for finding that these records undermine Dr. Lubinski's opinion concerning plaintiff's physical functioning. The ALJ thus gave a specific and legitimate reason to discount that opinion.

Accordingly, the ALJ did not err in discounting the medical opinions regarding plaintiff's physical limitations. On remand, the ALJ does not need to revisit those opinions.

## V. CONCLUSION

Based on the above analysis, the Defendant's decision to deny benefits is REVERSED, and the matter is remanded to the Commissioner for further proceedings. Because the ALJ erred in rejecting the opinions of Dr. Bragg, Dr. Lewis, and Ms. Piontek-Walsh regarding plaintiff's mental health, on remand the ALJ must reevaluate each of these opinions, as well as all other evidence regarding plaintiff's mental-health impairments and their limiting effects on her ability to work. The ALJ is also directed to reevaluate the plaintiff's RFC and determine, considering the record as a whole, whether plaintiff is disabled.

Dated this 7th day of May, 2019.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge